UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 24-cv-21809

GOORIN BROS., INC.,

     Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE A,

     Defendants.

_____/

## COMPLAINT

Plaintiff GOORIN BROS., INC. ("GOORIN BROS." or "Plaintiff"), by and through undersigned counsel, hereby sues Defendants, the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on Schedule A (collectively, "Defendants"). Defendants are promoting, selling, offering for sale, and importing goods into the United States that infringe Plaintiff's copyrights and trademarks, within this district, through various Internet based e-commerce stores using the seller identities set forth on Schedule A (the "Seller IDs"), and alleges as follows:

## INTRODUCTION

1.    This action has been filed by Plaintiff to combat online counterfeiters who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with the GOORIN BROS. copyrights, which are covered by U.S. Copyright Office Registration Nos. VA 2-012-523, VA 2-012-524, VA 2-012-525, VA 2-012-657, VA 2-012-660, VA 2-012-663, VA 2-012-716, VA 2-012-735, VA 2-012-747, VA 2-012-748, VA 2-012-749, VA 2-012-751, VA 2-186-

1

472, VA 2-186-476, VA 2-187-971, VA 2-191-408, VA 2-192-729, VA 2-192-730, VA 2-192-732, VA 2-192-745, VA 2-192-752, VA 2-192-762, VA 2-192-767,  VA 2-192-778, VA 2-192-792, VA 2-192-800, VA 2-192-815, VA 2-192-820, VA 2-192-825, VA 2-192-832, VA 2-192-846, VA 2-192-850, VA 2-192-852, VA 2-192-855, VA 2-192-861, VA 2-192-866, VA 2-193-876, VA 2-237-003, VA 2-237-012, VA 2-237-013, VA 2-240-504, VA 2-240-506, VA 2-240-508, VA 2-240-509, VA 2-240-511, VA 2-240-514, VA 2-242-440, VA 2-242-444, VA 2-242-445, VA 2-242-446, VA 2-242-447, VA 2-242-448, VA 2-242-449, VA 2-242-450, VA 2-242-451, VA 2-242-452, VA 2-244-689, VA 2-244-690, VA 2-244-692, VA 2-244-693, VA 2-245-560, VA 2-247-836, VA 2-247-837, VA 2-247-838, VA 2-248-829, VA 2-249-021, VA 2-249-022, VA 2-249-023, VA 2-249-026, VA 2-249-829, VA 2-249-832,  VA 2-249-835, VA 2-249-836, VA 2-250-012, VA 2-250-014, VA 2-250-016, VA 2-250-018,  VA 2-250-019, VA 2-250-289, VA 2-250-291, VA 2-250-292, VA 2-250-314, VA 2-250-317, VA 2-250-318, VA 2-250-365, VA 2-250-367, VA 2-250-377, VA 2-250-380, VA 2-250-694, VA 2-250-695, VA 2-250-696, VA 2-252-029, VA 2-252-031, VA 2-252-032, VA 2-252-034, VA 2-252-042, VA 2-255-905, VA 2-255-906, VA 2-255-909, VA 2-255-924, VA 2-255-926, VA 2-255-929, VA 2-255-931, VA 2-255-933, VA 2-255-934, VA 2-255-935, VA 2-255-937, VA 2-255-939, VA 2-255-943, VA 2-255-984, VA 2-255-985, VA 2-255-986, VA 2-255-987, VA 2-255-989, VA 2-264-229, VA 2-264-236, VA 2-264-537, VA 2-265-284, VA 2-265-312, VA 2-265-492, VA 2-265-493, VA 2-294-500, VA 2-294-518, and VA 2-294-526, (collectively, the "GOORIN BROS. Copyrights" or "GOORIN BROS. Copyright Registrations"); and the GOORIN BROS. trademarks, which are covered by U.S. Trademark Registration Nos. 3293389, 3293390, 3293391, 3293392, 3338514, 3338516, 3825020, 3825023, 3825024, 5479732, 6839726, 6866607, 6866608, and 7189474 (collectively, the "GOORIN BROS. Trademarks" or "GOORIN BROS. Trademark Registrations").

2.     The GOORIN BROS. Copyrights are valid, subsisting, and in full force and effect. True and correct copies of the federal copyright registration certificates for the GOORIN BROS. Copyrights are attached as **Composite Exhibit 1.**

3.     The GOORIN BROS. Trademarks are valid, subsisting, and in full force and

effect. True and correct copies of the federal trademark registration certificates for the GOORIN BROS. Trademarks are attached as **Composite Exhibit 1.**

4.      Defendants are improperly advertising, marketing, and/or selling unauthorized and illegal products (the "Counterfeit Products") embodying GOORIN BROS. Copyrights and/or GOORIN BROS. Trademarks.  By selling Counterfeit Products that purport to be genuine and authorized products using the GOORIN BROS. Copyrights and GOORIN BROS. Trademarks (the "GOORIN BROS. Products"), Defendants cause confusion and deception in the marketplace.

5.      Defendants conduct this activity through their numerous fully interactive commercial Internet e-commerce stores operating under the online marketplace accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"), including but not limited to the platforms Amazon.com ("Amazon"), DHGate.com ("DHGate"), eBay.com ("eBay"), Shein.com ("Shein"), Temu.com ("Temu"), Walmart.com ("Walmart"), and other individual websites (collectively, the "Marketplace Platforms").

6.      Defendants design the online marketplace accounts to appear to be selling genuine GOORIN BROS. Products, while selling inferior imitations of such products.

7.      The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

8.      Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of the GOORIN BROS. Copyrights and GOORIN BROS. Trademarks, as well as to protect unknowing consumers from purchasing

Counterfeit Products.

9.      As a result of Defendants' actions, Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishing of its valuable copyrights, trademarks, and goodwill and, therefore, seeks injunctive and monetary relief.

10.      This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Florida and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Florida and in this Judicial District.

11.      In addition, each Defendant has offered to sell and ship infringing products into this Judicial District.

## SUBJECT MATTER JURISDICTION

12.      This Court has original subject matter jurisdiction over the copyright claim pursuant to the Copyright Laws of the United States, 17 U.S.C. § 101 et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

13.      This Court has original subject matter jurisdiction over the trademark infringement and false designation of origin claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

## PERSONAL JURISDICTION AND VENUE

14.      Defendants are subject to personal jurisdiction in this district because they direct business activities toward and conduct business with consumers through the United States, including within the State of Florida and this district, through at least the Internet based e-commerce stores and fully interactive commercial internet websites accessible in Florida and operating under the Defendant Internet Stores and Seller IDs.

15.      Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including those in Florida, in

this Judicial District, through their Marketplace Platforms, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("User Account(s)"), through which consumers in the U.S., including Florida (and more particularly, in this Judicial District), can view one or more of Defendants' online marketplace accounts that each Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products (as defined *infra*) and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including Florida (and more particularly, in this Judicial District), as a means for establishing regular business with the U.S., including Florida (and more particularly, in this Judicial District).

16.     Upon information and belief, Defendants have transacted business with consumers located in the U.S., including Florida (and more particularly, in this Judicial District), for the sale and shipment of Counterfeit Products.

17.     Venue is proper in this Court pursuant to at least 28 U.S.C. §§ 1391(b)(2) and 1400(a) because Defendants have committed acts of copyright infringement and trademark infringement in this Judicial District and do substantial business in the Judicial District.

## **THE PLAINTIFF**

18.     Plaintiff GOORIN BROS., Inc. is a California domestic business corporation with its principal place of business in San Francisco, California.

19.     Plaintiff is the registered owner of the following GOORIN BROS. Copyrights (attached as Composite Exhibit 1), duly and legally issued by the United States Copyright Office:

| Copyright Reg. No. | Copyright | Registration Date |
|---|---|---|
| VA 2-012-523 | Rooster | Mar. 10, 2016 |
| VA 2-012-524 | Black Sheep | Mar. 10, 2016 |
| VA 2-012-525 | Cougar | Mar. 10, 2016 |

| Copyright Reg. No. | Copyright | Registration Date |
|---|---|---|
| VA 2-012-657 | Squirrel Master Animal Farm – a collection of Goorin hats with embroidered patches depicting various animals along with a short phrase | Mar. 10, 2016 |
| VA 2-012-660 | Honeywell | Mar. 10, 2016 |
| VA 2-012-663 | Howler | Mar. 10, 2016 |
| VA 2-012-716 | Grizz | Mar. 10, 2016 |
| VA 2-012-735 | X the Owl | Mar. 10, 2016 |
| VA 2-012-747 | Donkey Ass | Mar. 10, 2016 |
| VA 2-012-748 | San Francisco | Mar. 10, 2016 |
| VA 2-012-749 | Life of Leisure | Mar. 10, 2016 |
| VA 2-012-751 | Beaver | Mar. 10, 2016 |
| VA 2-186-472 | Killer | Nov. 22, 2019 |
| VA 2-186-476 | Peacock | Nov. 26, 2019 |
| VA 2-187-971 | King Snake | Nov. 26, 2019 |
| VA 2-191-408 | Beaver | Apr. 5, 2019 |
| VA 2-192-729 | Foxy | Apr. 5, 2019 |
| VA 2-192-730 | Fever | Apr. 5, 2019 |
| VA 2-192-732 | Floater | Apr. 5, 2019 |
| VA 2-192-745 | Gorilla | Apr. 5, 2019 |
| VA 2-192-752 | Gallo | Apr. 5, 2019 |
| VA 2-192-762 | Peace | Apr. 5, 2019 |
| VA 2-192-767 | Toucan Do It | Apr. 5, 2019 |
| VA 2-192-778 | Elephant | Apr. 5, 2019 |
| VA 2-192-792 | Tuna | Apr. 5, 2019 |
| VA 2-192-800 | Wise Ass | Apr. 5, 2019 |
| VA 2-192-815 | Bull | Apr. 5, 2019 |
| VA 2-192-820 | Woody Wood | Apr. 5, 2019 |
| VA 2-192-825 | Pecker | Apr. 5, 2019 |
| VA 2-192-832 | Tiger | Apr. 5, 2019 |
| VA 2-192-846 | Freedom | Apr. 5, 2019 |
| VA 2-192-850 | Horny | Apr. 5, 2019 |
| VA 2-192-852 | Lone Wolf | Apr. 5, 2019 |
| VA 2-192-855 | Nuts | Apr. 5, 2019 |
| VA 2-192-861 | Cock | Apr. 5, 2019 |
| VA 2-192-866 | Black Sheep | Apr. 5, 2019 |
| VA 2-193-876 | R1366 Cock Gray Leather | Jan. 9, 2020 |
| VA 2-237-003 | R2147 Silver Tiger | Feb. 1, 2021 |
| VA 2-237-012 | R2074 Baboon | Dec. 16, 2020 |
| VA 2-237-013 | R2158 Bouncer | Dec. 16, 2020 |
| VA 2-240-504 | R2120 Lady Bug | Feb. 12, 2021 |
| VA 2-240-506 | R2156 Buffalo | Feb. 12, 2021 |
| VA 2-240-508 | R2168 Baked | Feb. 12, 2021 |
| VA 2-240-509 | R2203 Toro | Feb. 12, 2021 |
| VA 2-240-511 | R2150 Dark Stallion | Feb. 12, 2021 |
| VA 2-240-514 | R3010 Black Sheep | Feb. 12, 2021 |
| VA 2-242-440 | R3113 Blue Exotic Tiger | Mar. 16, 2021 |

| Copyright Reg. No. | Copyright | Registration Date |
|---|---|---|
| VA 2-242-444 | R3071 Spider | Mar. 16, 2021 |
| VA 2-242-445 | R3072 Viper | Mar. 16, 2021 |
| VA 2-242-446 | R3074 Moth | Mar. 16, 2021 |
| VA 2-242-447 | R3075 Crocodile | Mar. 16, 2021 |
| VA 2-242-448 | R3026 Curious Cat | Mar. 16, 2021 |
| VA 2-242-449 | R3023 Frisky Whisky | Mar. 16, 2021 |
| VA 2-242-450 | R3029 Bad Luck Cat | Mar. 16, 2021 |
| VA 2-242-451 | R3065 Frenchie | Mar. 16, 2021 |
| VA 2-242-452 | R3081 Koala | Mar. 16, 2021 |
| VA 2-244-689 | R2121 Beast Lion | Mar. 25, 2021 |
| VA 2-244-690 | R1336 Bear Lone Star | Mar. 25, 2021 |
| VA 2-244-692 | R2064 Bass | Mar. 25, 2021 |
| VA 2-244-693 | R1766 Owl Hooters | Mar. 25, 2021 |
| VA 2-245-560 | R1876 Donkey "Bad" | Mar. 25, 2021 |
| VA 2-247-836 | R2073 "Funky" Monkey | Jan. 22, 2021 |
| VA 2-247-837 | R2201 Alacran | Jan. 22, 2021 |
| VA 2-247-838 | R2199 "Champion" Horse | Jan. 22, 2021 |
| VA 2-248-829 | R2051 Fowl Duck | Apr. 2, 2021 |
| VA 2-249-021 | R1418 Sitting Butch Bulldog | Apr. 2, 2021 |
| VA 2-249-022 | R2157 Good Boy Dog | Apr. 9, 2021 |
| VA 2-249-023 | R2057 High Bird | Apr. 9, 2021 |
| VA 2-249-026 | R2132 Black Swan | Apr. 9, 2021 |
| VA 2-249-829 | R2213 Tucan | Apr. 21, 2021 |
| VA 2-249-832 | R3009 Fierce Leopard | Apr 21, 2021 |
| VA 2-249-835 | R3018 Mammoth | Apr. 21, 2021 |
| VA 2-249-836 | R3054 Eagle | Apr. 21, 2021 |
| VA 2-250-012 | R2195 Player Possum | Apr. 30, 2021 |
| VA 2-250-014 | R2155 Moose Rack | Apr. 30, 2021 |
| VA 2-250-016 | R3008 Sassy Dog | Apr. 30, 2021 |
| VA 2-250-018 | R2166 Tough Rottweiler | Apr. 30, 2021 |
| VA 2-250-019 | R2185 Stinger Stingray | Apr. 30, 2021 |
| VA 2-250-289 | R1334 Lion | Apr. 21, 2021 |
| VA 2-250-291 | R2092 Wild Baby Tiger | Apr. 21, 2021 |
| VA 2-250-292 | R2181 Little Rooster | Apr. 21, 2021 |
| VA 2-250-314 | R2151 Dark Rooster | Apr. 21, 2021 |
| VA 2-250-317 | R1895 Happy Penguin | Apr. 21, 2021 |
| VA 2-250-318 | R2204 Pantera | Apr. 21, 2021 |
| VA 2-250-365 | R2184 Lion Red Border | Apr. 21, 2021 |
| VA 2-250-367 | R2153 Jack Ass | Apr. 21, 2021 |
| VA 2-250-377 | R2163 Pit bull | Apr. 21, 2021 |
| VA 2-250-380 | R3019 Sabertooth | Apr. 21, 2021 |
| VA 2-250-694 | R2211 Perico | Apr. 21, 2021 |
| VA 2-250-695 | R3001 Mama Bear | Apr. 21, 2021 |
| VA 2-250-696 | R2205 Jaguar | Apr. 21, 2021 |
| VA 2-252-029 | R2154 "Hunter" Coyote | Jan. 22, 2021 |
| VA 2-252-031 | R2003 Shark | Jan. 22, 2021 |

| Copyright Reg. No. | Copyright | Registration Date |
|---|---|---|
| VA 2-252-032 | R3108 "Exotic" Bird | Jan. 22, 2021 |
| VA 2-252-034 | R2178 "Flirt" Bird | Jan. 22, 2021 |
| VA 2-252-042 | R2212 Aguila | Jan. 22, 2021 |
| VA 2-255-905 | R2185 Stinger | Jun. 4, 2021 |
| VA 2-255-906 | R2164 Weiner | Jun. 4, 2021 |
| VA 2-255-909 | R2065 Trout | Jun. 4, 2021 |
| VA 2-255-924 | R1890 Black Bear | Apr. 2, 2021 |
| VA 2-255-926 | R1417 Billy Goat | Apr. 2, 2021 |
| VA 2-255-929 | Wise Ass Owl | Jun. 4, 2021 |
| VA 2-255-931 | GO-019538R Pig | Jun. 4, 2021 |
| VA 2-255-933 | R2148 Wise Owl | Jun. 4, 2021 |
| VA 2-255-934 | R1862 Pointer Dog | Jun. 4, 2021 |
| VA 2-255-935 | R2124 Weasel | Jun. 4, 2021 |
| VA 2-255-937 | R2006 Turkey | Jun. 4, 2021 |
| VA 2-255-939 | R2134 Warewolf | Jun. 4, 2021 |
| VA 2-255-943 | R2125 Vulture | Jun. 4, 2021 |
| VA 2-255-984 | R1938 Butch Bulldog | Apr. 2, 2021 |
| VA 2-255-985 | R1866 Cub Bear | Apr. 2, 2021 |
| VA 2-255-986 | R2052 Dark Horse | Apr. 2, 2021 |
| VA 2-255-987 | R1314 Bird | Jun. 4, 2021 |
| VA 2-255-989 | R2169 Chill Turtle | Apr. 2, 2021 |
| VA 2-264-229 | R1318 Bitch Dog | Jun. 4, 2021 |
| VA 2-264-236 | R1829 Rack Deer | Jun. 4, 2021 |
| VA 2-264-537 | R1761 Buck Fever Leaping | Apr. 09, 2021 |
| VA 2-265-284 | R1909 Snap Gator | Jun. 4, 2021 |
| VA 2-265-312 | R1317 Beaver | Jun. 4, 2021 |
| VA 2-265-492 | R1311 Cock Patch | Jun. 4, 2021 |
| VA 2-265-493 | R1316 Foxy | Jun. 4, 2021 |
| VA 2-294-500 | R3199 Snow Leopard BLK | Mar. 4, 2022 |
| VA 2-294-518 | R3194 Hard Buffalo WHI | Mar. 4, 2022 |
| VA 2-294-526 | R3192 Alpha Dog | Mar. 4, 2022 |

20.    Plaintiff is the registered owner of the following GOORIN BROS. Trademarks (attached as **Composite Exhibit 1**), duly and legally issued by the United States Patent and Trademark Office:

| U.S. TM Reg. No. | Trademark | Registration Date |
|---|---|---|
| 3,293,389 | GOORIN | Sep. 18, 2007 |
| 3,293,390 | GOORIN | Sep. 18, 2007 |
| 3,293,391 | Castle Mark | Sep. 18, 2007 |
| 3,293,392 | Castle Mark | Sep. 18, 2007 |
| 3,338,514 | GOORIN | Nov. 20, 2007 |
| 3,338,516 | Castle Mark | Nov. 20, 2007 |
| 3,825,020 | GOORIN BROS. | Jul. 27, 2010 |
| 3,825,023 | GOORIN BROS. | Jul. 27, 2010 |
| 3,825,024 | GOORIN BROS. | Jul 27, 2010 |
| 5,479,732 | Squirrel Mark | May 29, 2018 |
| 6,839,726 | GOORIN BROS. | Sep. 6, 2022 |
| 6,866,607 | Castle Mark | Oct. 4, 2022 |
| 6,866,608 | GOORIN BROS. | Oct. 4, 2022 |
| 7,189,474 | Castle Mark | Oct. 10, 2023 |

## THE DEFENDANTS

21.     Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China or other foreign jurisdictions.

22.     Defendants are merchants on online e-commerce platforms, including the Marketplace Platforms.

## THE GOORIN BROS. PRODUCTS

23.     Plaintiff specializes and has specialized in the manufacture and sale of hats, including trucker caps, headwear, and related apparel and accessories with unique and distinctive designs, to which Plaintiff holds the Copyrights. The GOORIN Bros. Products have acquired national and worldwide fame and recognition because of their unique and novel designs.

24.     Much of GOORIN BROS.' Copyrighted works feature square-shaped patches showcasing artistic images of animals on GOORIN BROS. hats. For example:




25.     Plaintiff has been selling its iconic animal hats since as early as 2004. Starting in 2016 and continuing until the present day, Plaintiff has obtained copyright registrations for its GOORIN BROS. Products. For example, Plaintiff obtained a copyright for the above-depicted Companion character covered by U.S. Copyright Office Registration No. VA 2-252-042 ("Aguila," effective date of registration January 22, 2021). Similarly, Plaintiff obtained a copyright for the above depicted BFF character covered by U.S. Copyright Office Registration No. VA 2-247-837 ("Alacran," effective date of registration January 22, 2021). Exemplary units of the Aguila and Alacran copyrighted works have been deposited with the United States Copyright Office and remain available for inspection there.

26.     From the date of the creation of the first GOORIN BROS. Products to the present, Plaintiff is and has been the sole and official source of genuine GOORIN BROS. Products in the United States. Plaintiff sells GOORIN BROS. Products through its website, goorin.com, and through authorized online retailers.

27.     Since at least 2004, the GOORIN BROS. Trademarks are and have been the subject of substantial and continuous marketing and promotion by Plaintiff. Plaintiff has and continues to widely market and promote the GOORIN BROS. Trademarks in the industry and to consumers. For example, Plaintiff promotes GOORIN BROS. Products through its website (www.goorin.com) and through social media.

28.     The GOORIN BROS. Trademarks are distinctive and identify the artwork as coming from Plaintiff.

29.     The registrations for the GOORIN BROS. Trademarks constitute prima facie evidence of their validity and of Plaintiff's exclusive right to use those trademarks pursuant to 15 U.S.C. § 1057(b).

30.     The GOORIN BROS. Trademarks qualify as famous marks, as that term is used in 15 U.S.C. §1125 (c)(1), and they have been continuously used and never abandoned.

31.     Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the GOORIN BROS. Products. Indeed, products embodying either or both of the GOORIN BROS. Copyrights and the GOORIN BROS. Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff.

32.     Plaintiff owns all rights, including without limitation, the rights to reproduce the copyrighted works in copies, to prepare derivative works based upon the copyrighted works, and to distribute copies of the copyrighted works to the public by sale or other transfer of ownership, or by rental, lease, or lending, in the GOORIN BROS. Copyrights as the owner of those copyrights.

## THE DEFENDANTS' UNLAWFUL CONDUCT

33.     The success of the GOORIN BROS. Products has resulted in significant counterfeiting. Plaintiff has identified numerous Defendant Internet Stores linked to fully interactive websites on e-commerce sites including the Marketplace Platforms. These Defendant Internet Stores offer for sale, sell, and import Counterfeit Products to consumers in this Judicial District and throughout the United States.

34.     Defendants have persisted in creating such online marketplaces and internet stores, like the Defendant Internet Stores. In fact, such online marketplaces and stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2021 was over $3.3 billion. Websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

35.     On personal knowledge and belief, Defendants facilitate sales by designing the

Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine GOORIN BROS. Products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

36.     Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

37.     Plaintiff has not licensed or authorized Defendants to use the GOORIN BROS. Copyrights or the GOORIN BROS. Trademarks. The Defendants are not authorized retailers of genuine GOORIN BROS. Products.

38.     On personal knowledge and belief, Defendants also deceive unknowing consumers by using without authorization the GOORIN BROS. Copyrights and the GOORIN BROS. Trademarks within the product descriptions, content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for GOORIN BROS. Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine GOORIN BROS. Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such, Plaintiff also seeks to disable the Defendant Internet Stores owned and/or operated by Defendants that are the means by which the Defendants could continue to sell Counterfeit Products into this Judicial District.

39.     On information and belief, Defendants go to great lengths to conceal their identities

12

and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, it is common practice for counterfeiters to register their domain names and/or User Accounts with incomplete information, randomly typed letters, or omitted cities or states.

40.     On personal knowledge and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

41.     On personal knowledge and belief, even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendants' Internet Stores. For example, some of the Defendant marketplace websites have virtually identical layouts, even though different aliases were used to register the respective domain names.

42.     In addition, the Counterfeit Products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

43.     The Defendant Internet Stores also include other notable common features, including accepted payment methods, check-out methods, metadata, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

44.     In addition, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under User Accounts once they receive notice of a lawsuit.[1]

45.     Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners.[2]

46.     Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

47.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts.

48.     On personal knowledge and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to

---

[1]https://www.ice.gov/news/releases/buyers-beware-ice-hsi-and-cbp-boston-warn-consumers-about-counterfeit-goods-during (noting counterfeiters are adept at "setting up online stores to lure the public into thinking they are purchasing legitimate good on legitimate websites") (last visited May 9, 2024).

[2] While discussed in the context of false pharma supply chains, rogue internet servers and sellers are a well-known tactic that have even been covered in congressional committee hearings. https://www.govinfo.gov/content/pkg/CHRG-113hhrg88828/html/CHRG-113hhrg88828.htm (last visited May 9, 2024).

foreign-based bank accounts outside the jurisdiction of this Court.

49.     Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the GOORIN BROS. Copyrights and the GOORIN BROS. Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Florida over the Internet.

50.     Each Defendant Internet Store offers shipping to the United States, including Florida (in this Judicial District) and, on information and belief, each Defendant has offered to sell counterfeit GOORIN BROS. Products into the United States, including Florida (in this Judicial District).

51.     Defendants' use of the GOORIN BROS. Copyrights and the GOORIN BROS. Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

52.     Prior to and contemporaneous with their counterfeiting actions alleged herein, Defendants had knowledge of Plaintiff's ownership of the GOORIN BROS. Copyrights and the GOORIN BROS. Trademarks, of the fame and incalculable goodwill associated therewith and of the popularity and success of the GOORIN BROS. Products, and in bad faith proceeded to manufacture, market, develop, offer to be sold, and/or sell the Counterfeit Products.

53.     Defendants have been engaging in the illegal counterfeiting actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff and the GOORIN BROS. Products.

**FIRST CAUSE OF ACTION**
**COPYRIGHT INFRINGEMENT (17 U.S.C. § 101, et seq.)**

54.     Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1–54 of this Complaint.

55.     Plaintiff owns all exclusive rights, including without limitation the rights to reproduce the copyrighted works in copies, to prepare derivative works based upon the copyrighted works, and to distribute copies of the copyrighted works to the public by sale or other transfer of ownership, or by rental, lease, or lending, in the GOORIN BROS. Copyrights.

56.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the GOORIN BROS. Copyrights without Plaintiff's permission.

57.     Defendants had access to the GOORIN BROS. Products incorporating Plaintiff's registered GOORIN Bros. Copyrights before Defendants created the Defendant Internet Stores.

58.     Upon information and belief, Defendants have directly copied the GOORIN BROS. Copyrights. Alternatively, Defendants' representations of Plaintiff's copyrights for the GOORIN BROS. Products in the online marketplace accounts are strikingly similar, or at the very least substantially similar to the GOORIN BROS. Copyrights, and constitute unauthorized copying, reproduction, distribution, creation of a derivative work, and/or public display of Plaintiff's copyrights for the GOORIN BROS. Products.

59.     As just one example, Defendants deceive unknowing consumers by using the GOORIN BROS. Copyrights without authorization within the product descriptions of their online marketplace accounts to attract customers as follows:



*Exemplary picture of Plaintiff's Copyright*



*Exemplary picture of Defendant's Product with Copyrighted Image*



*Exemplar of Counterfeit Product Sold by Defendant Internet Store*

60.    Defendants' exploitation of Plaintiff's copyrights for the GOORIN BROS.

Products in the Defendant Internet Stores constitutes infringement of the GOORIN BROS.

17

Copyrights.

61.     On information and belief, Defendants' infringing acts were willful, deliberate, and committed with prior notice and knowledge of Plaintiff's copyrights. Each Defendant willfully, wantonly, and in conscious disregard and intentional indifference to the rights of Plaintiff made and distributed in the United States, including this District, caused to be made and distributed in the United States, including this District, and aided, abetted, contributed to, and participated in the unauthorized making and distribution of Counterfeit Products.

62.     Each Defendant either knew, or should have reasonably known, that Plaintiff's GOORIN BROS. Products were protected by copyright and that their representations infringed on Plaintiff's copyrights.  Each Defendant continues to infringe upon Plaintiff's rights in and to the various copyrighted works.

63.     As a direct and proximate result of their wrongful conduct, Defendants have realized and continue to realize profits and other benefits rightfully belonging to Plaintiff. Accordingly, Plaintiff seeks an award of damages pursuant to 17 U.S.C. § 504.

64.     In addition to Plaintiff's actual damages, Plaintiff is entitled to receive the profits made by the Defendants from their wrongful acts, pursuant to 17 U.S.C. § 504(b). Each Defendant should be required to account for all gains, profits, and advantages derived by each Defendant from their acts of infringement.

65.     In the alternative, Plaintiff is entitled to, and may elect to choose statutory damages pursuant to 17 U.S.C. § 504(c), which should be enhanced by 17 U.S.C. § 504(c)(2) because of Defendants' willful copyright infringement.

66.     Plaintiff is entitled to, and may elect to choose injunctive relief under 17 U.S.C. § 502, enjoining any use or exploitation by Defendants of their infringing work and for an order

under 17 U.S.C. § 503 that any of Defendants' infringing products be impounded and destroyed.

67.     Plaintiff seeks and is also entitled to recover reasonable attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505.

68.     Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to their reputation and the goodwill of its well-known GOORIN BROS. Copyrights.

**SECOND CAUSE OF ACTION**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING**
**(15 U.S.C. § 1114, et seq.)**

69.     Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1–54 of this Complaint.

70.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered GOORIN BROS. Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The GOORIN BROS. Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Plaintiff's products provided under the GOORIN BROS. Trademarks.

71.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the GOORIN BROS. Trademarks without Plaintiff's permission.

72.     Plaintiff is the registered owner of the GOORIN BROS. Trademarks. The United States Registrations for the GOORIN BROS. Trademarks (Exhibit 2) are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiff's rights in the GOORIN BROS. Trademarks and are willfully infringing and intentionally using counterfeits of the

GOORIN BROS. Trademarks. Defendants' willful, intentional, and unauthorized use of the GOORIN BROS. Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

73.     As just one example, Defendants deceive unknowing consumers by using the GOORIN BROS. Trademarks without authorization within the product descriptions of their online marketplace accounts to attract customers as follows:

*Exemplary picture of Plaintiff's Trademark*



*Exemplary picture of Defendant's Product with Plaintiff's Trademark*



*Exemplar of Counterfeit Product Sold by Defendant Internet Store*



74.     Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

75.     The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit GOORIN BROS. Products.

76.     Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to their reputation and the goodwill of its well-known GOORIN BROS. Trademarks.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable and monetary relief against Defendants as follows:

      1)     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

         i.     using the GOORIN BROS. Copyrights and GOORIN BROS. Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine GOORIN BROS. Product or is not authorized by Plaintiff to be sold in connection with the GOORIN BROS. Copyrights and GOORIN BROS. Trademarks;

        ii.     passing off, inducing, or enabling others to sell or pass off any product as a genuine GOORIN BROS. Product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the GOORIN BROS. Copyrights and GOORIN BROS. Trademarks;

        iii.     committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

        iv.     further infringing the GOORIN BROS. Copyrights and GOORIN BROS. Trademarks and damaging Plaintiff's goodwill;

        v.     otherwise competing unfairly with Plaintiff in any manner;

        vi.     shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which copy the GOORIN BROS. Copyrights and GOORIN BROS. Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof;

vii.     using, linking to, transferring, selling, exercising control over, or otherwise owning any online marketplace accounts, the Defendant Internet Stores, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell Counterfeit Products; and

viii.     operating and/or hosting online marketplace accounts at the Defendant Internet Stores that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product embodying the GOORIN BROS. Copyrights and GOORIN BROS. Trademarks or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine GOORIN BROS. Product or not authorized by Plaintiff to be sold in connection with the GOORIN BROS. Copyrights and GOORIN BROS. Trademarks.

2)     Entry of an Order that the Marketplace Platforms, including without limitation Amazon, DHGate, eBay, Shein, Temu, Walmart, and any other online marketplace account through which Defendants are selling Counterfeit Products:

i.     disable and cease providing services for any accounts through which Defendants sell Counterfeit Products, including any accounts associated with the Defendants listed on Schedule A;

ii.     disable and cease displaying any advertisements used by or associated with Defendants in connection with their sale of Counterfeit Products; and

iii.     take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index.

3)     That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for

infringement of the GOORIN BROS. Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4)      In the alternative, that Plaintiff be awarded statutory damages of not more than $30,000 for each and every infringement of the GOORIN BROS. Copyrights pursuant to 17 U.S.C. § 504(c), which should be enhanced to a sum of not more than $150,000 by 17 U.S.C. § 504(c)(2) because of Defendants' willful copyright infringement and not less than $1,000 and not more than

$2,000,000 for each and every use of the GOORIN BROS. Trademarks and statutory damages of not less than $750 pursuant to 15 U.S.C. § 1117(c);

5)      That Plaintiff be awarded its reasonable attorneys' fees and costs; and

6)      Award any and all other relief that this Court deems just and proper.

Dated: May 9, 2024                      Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

*/s/ James W. Lee*
James W. Lee (FL Bar No. 67558)
100 SE 2nd Street Suite 2800
Miami, Florida 33131
Tel: (305) 357-8436
jwlee@bsfllp.com

***Counsel for Plaintiff Goorin Bros., Inc.***

24